UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CR 00049 CDP/DDN |
| | ) | |
| RAMIZ ZIJAD HODZIC, | ) | |
| a/k/a Siki Ramiz Hodzic, | ) | |
| | ) | |
| SEDINA UNKIC HODZIC, | ) | |
| | ) | |
| NIHAD ROSIC, | ) | |
| a/k/a Yahya AbuAyesha Mudzahid, | ) | |
| | ) | |
| MEDIHA MEDY SALKICEVIC, | ) | |
| a/k/a Medy Ummuluna, | ) | |
| a/k/a Bosna Mexico, and | ) | |
| | ) | |
| ARMIN HARCEVIC | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Matthew T. Drake, Howard Marcus, and Kenneth Tihen, Assistant United States Attorneys for said District, Mara Kohn and Joshua Champagne, Trial Attorneys for the United States Department of Justice, National Security Division, Counterterrorism Section, and submit the following in response and opposition to the Defendants' collective Motions to Dismiss the Indictment:

1

## INTRODUCTION

A.    Background

On February 5, 2015, criminal proceedings were initiated against the captioned defendants.   A Grand Jury in the Eastern District of Missouri charged the defendants with two counts of Providing Material Support to Terrorists, in violation of Title 18, U.S.C. §2339A (Counts I and III).

Count I of the Indictment alleges a conspiracy.   The Indictment specifically alleges that:

[b]eginning on a date unknown but no later than in May 2013, and continuing to the present [February 2015]. . . Ramiz Zijad Hodzic a/k/a Siki Ramiz Hodzic, Sedina Unkic Hodzic, Nihad Rosic a/k/a Yahya Abuayesha Mudzahid, Mediha Medy Salkicevic a/k/a Medy Ummuluna a/k/a Bosna Mexico, [and] Armin Harcevic, [] the defendants herein, and Abdullah Ramo Pazara, a/k/a Abdullah Ramo Mudzahid, a/k/a Abdullah Pazara, a/k/a Abdullah Al Amriki, named but not indicted, and other persons known and unknown to the Grand Jury, (hereinafter in Count I, collectively "the members of the conspiracy"), did knowingly and willfully combine, conspire, confederate and agree with each other, to provide and attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including: currency and monetary instruments (collectively "money"), and property to include: United States military uniforms, combat boots, military surplus goods, tactical gear and clothing, firearms accessories, optical equipment and range finders, rifle scopes, and equipment, knowing and intending that such money and property were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to commit at places outside of the United States acts that would constitute offenses [of] murder and maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy.

Indictment Count I, ¶ 2.   While not required, the Indictment subsequently alleges 46 paragraphs of specific factual acts constituting the manner and means by which the respective defendants carried out the conspiracy.

The distinguishing feature of a conspiracy is the agreement to violate the law.   Iannelli v. United States, 420 U.S. 770, 777 (1975).   The Government need not prove that each

defendant knew every detail of a charged conspiracy.   However, the Government must prove that each defendant adopted the conspiracy's main objective. United States v. Crossley, 224 F.3d 847, 856 (6th Cir. 2000).

While Count I alleges a conspiracy, Count III alleges a substantive offense.   Count III tracks the language of the statute and alleges that the five defendants:

> did knowingly and willfully provide, and attempt to provide, material supplies and resources, as defined in Title 18, United States Code, Section 2339A(b), to include: United States currency and monetary instruments (money) and property to include: United States military uniforms, combat boots, military surplus goods, tactical gear and clothing, firearms accessories, optical equipment and range finders, first aid supplies, rifle scopes, and equipment, knowing and intending that such support was to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to commit at places outside the United States acts that would constitute offenses of murder or maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy.[1]

Indictment Count III, ¶ 2.

Counts I and III both allege violations of 18 U.S.C. § 2339A.   Section 2339A provides:

> Whoever provides material support or resources[2] or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section . . . 956, of this title, . . . or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both . . . .

In this case the Indictment alleges that the defendants provided material support or resources,

---

[1] Count III incorporates and alleges the same specific factual acts identified in the manner and means section of Count I.

[2] 18 U.S.C. § 2339A(b) defines the term "material support or resources" as any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

knowing or intending that they would be used in preparation for, or in carrying out a violation of 18 U.S.C. § 956.

The elements of 18 U.S.C. § 2339A are: first, the defendant provided material support or resources; and, second, that the defendant did so knowing or intending that such support or resources would be used in preparation for or in carrying out a conspiracy to murder, kidnap or maim persons abroad (18 U.S.C. § 956(a)).

The allegations in both Counts I and III track the language of the statute and incorporate the elements of the offense.   The defendants do not argue otherwise.

Two defendants, Siki Ramiz Hodzic and Nihad Rosic, are charged in Count II with a violation of 18 U.S.C. § 956(a), which provides:

> Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

The elements of 18 U.S.C. § 956(a) are: first, that the defendant agreed with one or more other persons to murder or maim another person at a place outside the United States.   Second, that the defendant willfully joined the agreement with the intent to further its purpose. Third, the defendant was within the jurisdiction of the United States when he conspired.   Fourth, that, during the existence of the agreement, one of the conspirators committed at least one overt act within the jurisdiction of the United States to effect any object of the agreement.

The allegations in Count II also track the language of the statute and incorporate the elements of the offense.   The defendants do not argue otherwise.

4

B.      Arguments alleged in the Motions to Dismiss

Each defendant separately filed a motion to dismiss counts of the Indictment applicable to the respective defendant.[3]   Collectively, the bases for these motions fall into six general categories.   The defendants argue: first, the Indictment fails to adequately allege facts sufficient to constitute the specific intent required.   In other words, the Indictment does not allege the appropriate mens rea.   Within this argument the defendants argue that the Indictment alleges, and the Government has adopted, either a general intent standard or a "fungible theory" of material support.   Second, the Indictment improperly alleges that the defendants were engaged in multiple inchoate offenses.   That is, the defendants conspired to engage in, or prepared to engage in, a conspiracy.   Third, the Indictment is defective in that it fails to specifically identify any designated foreign terrorist organization (FTO) that the defendants are alleged to have supported.   Fourth, the Indictment fails to allege facts sufficient to identify the object of the conspiracy or define its terms; namely the Indictment fails to allege sufficient facts and conduct that constitute murder and maiming persons abroad.   The defendants also argue that the Indictment fails to adequately inform the respective defendants of the nature of the charges by identifying the target or victim of the alleged conspiracy.   Fifth, that Abdullah Ramo Pazara (hereinafter Pazara) was a lawful combatant and therefore, the conspirators' support to him was not unlawful.   Sixth, the United States Government's foreign policy and support to the region and the broader conflict render the Indictment insufficient.   Each of these arguments will be addressed in detail below.

This Court should deny the defendants' Motions to Dismiss because the Indictment contains all of the essential elements of the offenses charged, fairly informs the defendants of the

---

[3] One defendant originally charged in the Indictment, Jasminka Ramic, pled guilty to a superseding information and the Indictment was dismissed as to her.

5

charges they must individually defend, supplies sufficient facts and information supporting the charges and allegations, and provides enough detail that the defendants may plead double jeopardy in any possible future prosecution based on the same set of facts.

      C.    <u>Statement of facts</u>

The Government offers the following facts relating to the overall conspiracy for the Court's consideration in assessing the defendant's motions and the Government's response. This material is but a portion of their criminal conduct and is offered to provide the Court with context, background, as well as a description of the overall scope of the conspiracy.[4]

On May 28, 2013, Pazara travelled from St. Louis, Missouri to Zagreb, Croatia, arriving there on May 29, 2013.   Originally Pazara was to travel with co-conspirator Nihad Rosic (Rosic).   At the time of the scheduled departure, Rosic had been arrested on domestic violence charges and was incarcerated in New York; thus, he was unable to travel with Pazara.[5]   Pazara ultimately arrived in Syria by at least July 2013.

Once in Syria, Pazara, burned his U.S passport and joined terrorist groups operating in the region to include the Islamic State of Iraq and Sham/Syria (ISIS/ISIL).   He engaged in violent jihadist activities to include taking up arms and weapons to fight in the region and the ongoing conflict, combat activities, murder, maiming and injuring others abroad.   Persons killed included individuals who fought alongside and with Pazara as well as other persons fighting against the individuals, groups and organization with whom Pazara was aligned.   Pazara continued to commit jihad until his death in September 2014.

---

[4] The background and factual summary provided is intended as a general guide to aid the Court. It is not intended as a comprehensive statement of the Government's case, and is not intended to be in the nature of a Bill of Particulars that would limit the Government's proof or evidence.

[5] As alleged in the Indictment, later in the conspiracy defendant Rosic twice attempted to travel to Syria to join Pazara, but Rosic was not permitted to fly.

Shortly after Pazara arrived in Syria, he began communicating with co-conspirators in the United States and elsewhere.   This included defendant Ramiz Hodzic (Hodzic).   These persons began efforts and conspired to support Pazara and the individuals he was working with and fighting alongside.   The individuals included the conspirators named in the Indictment as well as others who were not named.   This support was provided with the intent and knowledge that Pazara, and others who received the support and resources, would use the money and supplies to advance their conspiracy to include injuring, maiming and murdering persons.

Beginning in September 2013, and continuing thereafter, the conspirators collected their personal money, solicited money from others, and then provided it to defendant Hodzic.   In turn, defendants Hodzic and Sedina Hodzic (Sedina) transferred the money to Pazara through third party intermediaries. Hodzic and Sedina also used the money to purchase and ship military-type supplies and equipment to Pazara in Syria.   The materials included the items identified in the Indictment.[6]   During the time that the conspirators collected the material support and resources, Pazara and the others who he was acting with continued to engage in acts of violence to include injuring, maiming and murdering persons abroad.   The evidence will show that the conspirators knew of these overseas activities, discussed them among their fellow conspirators, and had access to information supplied by Pazara and others concerning the violent activities in which they were engaged.

## GENERAL LEGAL STANDARDS GOVERNING THE SUFFICIENCY OF INDICTMENTS AND MOTIONS TO DISMISS

Federal Rule of Criminal Procedure 7(c) governs what allegations an indictment must contain.   Rule 7 provides that an indictment, "shall be a plain, concise and definite statement of

---

[6] The defendants do not dispute that the resources and support meet the statutory definition in 2339A(b) of "material support or resources."

7

the essential facts constituting the offense charged." The Supreme Court has stated that an indictment is generally sufficient when it "set[s] forth the offense in the words of the statute itself, [and contains] such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Hamling v. United States, 418 U.S. 87, 117-18 (1974) (internal citations omitted).    That is the case with the Indictment in this matter.

In a number of cases the Supreme Court has emphasized "two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured. These criteria are, first, whether the indictment 'contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet and, secondly, 'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" Russell v. United States, 369 U.S. 748, 763 (1962) (citing Cochran and Sayre v. United States, 157 U.S. 286, 290 (1895)); Rosen v. United States, 161 U.S. 29, 34; Hagner v. United States, 285 U.S. 427, 431; and others.    "An indictment is sufficient if it apprises the defendant of the elements of the offenses charged, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense."    United States v. Henderson, 416 F.3d 686, 692 (8th Cir. 2005) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)); see also Russell v. United States, 369 U.S. 749, 763 (1962).    Moreover, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."    United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (internal citations omitted).

Well-settled law in this Circuit requires that an indictment adequately state an offense and holds that it will survive a motion to dismiss "unless no reasonable construction [of the alleged facts] can be said to charge the offense." United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995).   Similarly, an indictment is sufficient if it "contains all the essential elements of the offense[s,] fairly informs the defendant of the charges against which he [or she] must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." United States v. Carter, 270 F.3d 731, 736 (8th Cir. 2001).   "[A]n indictment is normally sufficient if it tracks the statutory language."   United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008), citing, United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002); see also United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993)).   See also United States v. Sohn, 567 F.3d 392, 394 (8th Cir. 2009); United States v. Hayes, 574 F.3d 460, 462 (8th Cir. 2009); United States v. Cave, 2013 WL 3766550 (D. Nebr. July 16, 2013) (quoting Sohn and rejecting motion to dismiss indictment).

"As a general rule, due process requires that the indictment give a defendant notice of each element of the charge against him so that he can prepare an adequate defense." United States v. Mann, 701 F.3d 274, 288 (8th Cir. 2012) (citing United States v. Becton, 751 F.2d 250, 256 (8th Cir. 1984)); see also United States v. Al-Arian, 308 F. Supp. 2d 1322, 1348 (M.D. Fla. 2004).   It is not necessary "for a particular word or phrase [to] appear in the indictment when the element is alleged 'in a form' [that] substantially states the element."   United States v. O'Hagan, 139 F.3d at 651 (quoting United States v. Mallen, 843 F.2d 1096, 1102 (8th Cir.) cert. denied, 488 U.S. 849 (1988)).   In other words, "[a]n indictment need not use specific words, so long as by fair implication it alleges the charged offense.   United States v. Henderson, 416 F.3d at 693 (citing O'Hagan, 139 F.3d 641 at 651).   An indictment "must be read in its entirety and

9

construed with common sense and practicality."   United States v. Awad, 551 F.3d 930, 936 (9th Cir. 2009) (internal quotation and citation omitted).

The Indictment in this case meets all these requirements and standards.   When read as a whole and assumed as true, the alleged facts in the Indictment clearly establish each defendant's respective knowledge and intent.   Indeed, the Indictment would be sufficiently charged if it only stated the allegations contained in paragraph 2 for Counts I and II.   Paragraph 2 alleges and informs the defendants of: (1) the specific charges (tracking the statutory language); (2) the individuals alleged to have participated in the conspiracy; (3) the time and location of the offense; and, (4) with specificity, the precise nature of the material "support and resources" that are alleged to have been provided, or attempted to be provided.   Specific to Count I, it further alleges the object of the conspiracy; that the material support and resources "were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to commit at places outside of the United States acts that would constitute offenses [of] murder and maiming if committed in the special maritime and territorial jurisdiction of the United States . . . ."   Indictment Count I, ¶ 2.   The Indictment also supplies facts that put the defendants on notice as to the nature of the Section 956 conspiracy that constitutes Count II and constitutes the predicate offense in Counts I and III.

In addition, the Grand Jury heard evidence of, and the Indictment alleges with specificity, certain facts that support the essential elements of the offense.   Notably, paragraphs three through forty-eight of Count I (incorporated by reference into Count III) contain a manner and means section with specific factual allegations.   These paragraphs allege acts specific to each defendant; detailing specific transactions, locations, etc.   Thus, the Indictment does more than what is legally required, that being to track the statutory language and state the elements of the

offenses charged.    It provides context and specific detail.

Because the Indictment satisfies all of the required legal standards particularly informing each defendant of the charges he or she faces and further provides sufficient detail that he or she may plead double jeopardy in a future prosecution based on the same set of facts, the Court should reject the defendants' claims that the Indictment fails to allege with requisite specificity.

Each of the defendants' specific arguments will now be addressed respectively.

## ARGUMENT

The defendants have each filed motions to dismiss the Indictment, based on a variety of arguments.    Challenging an indictment is not a means of testing the Government's evidence. Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."    United States v. Sampson, 371 U.S. 75, 78-79 (1962).    For the following reasons, the defendants' motions to dismiss should be denied.

A.    The Indictment sufficiently states violations of 18 U.S.C. § 2339A and adequately alleges facts sufficient to constitute the necessary mens rea

The defendants argue that Counts I and III should be dismissed because they do not properly plead law and facts to support the mens rea element of 18 U.S.C. § 2339A.[7]    For the following reasons the Motions to Dismiss should be denied as to Counts I and III.

1.    Legal standard as to the mens rea element of 18 U.S.C. § 2339A

Section 2339A carries a mens rea element that the defendant "provide . . . material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of [the predicate offense]."    18 U.S.C. § 2339A (emphasis added).    In

---

[7]  See Ramiz Hodzic Mot. to Dismiss Mem., Docket No. 237 at 10; Sedina Unkic Hodzic Mot. to Dismiss Mem., Docket No. 224 at 4; Nihad Rosic Mot. to Dismiss Mem., Docket No. 227 at 10; Mediha Medy Salkicevic Mot. to Dismiss Mem., Docket No. 231 at 8; Armin Harcevic Mot. to Dismiss Mem., Docket No. 208 at 8.

this case the predicate offense is 18 U.S.C. § 956(a), conspiracy to commit an act outside the United States that would constitute the offense of murder or maiming if committed in the United States.   See, e.g., United States v. Omar, 786 F.3d 1104, 1112 (8th Cir. 2015) ("[T]the Government had to prove certain aspects of Omar's knowledge [as to Section 2339A]. For instance, to prove Omar guilty of providing material support to terrorists, the Government had to establish that Omar provided material support or resources 'knowing or intending' that this support would be used in preparation for or in carrying out a conspiracy to murder or maim persons in a foreign country.").

In contrast with § 2339B (providing material support or resources to designated foreign terrorist organizations), § 2339A criminalizes providing material support to any recipient, irrespective of whether that recipient is or supports an FTO.   The mens rea element of § 2339A requires that the defendant knew or intended that the material support was to be used in preparation for, or in carrying out, the predicate offense.

Under § 2339A, the Government need not allege or prove that the defendants were attempting to carry out the predicate offense, or even that the defendants were in support of the predicate offense taking place.   Even if the defendants were indifferent as to whether the conspiracy to commit murder or maiming succeeded, an indictment properly alleges a substantive violation of § 2339A (Count III) if it alleges that the defendants provided or attempted to provide material support knowing or intending that this support was to be used in preparation for, or in carrying out, a conspiracy to murder or maim.   Likewise, an indictment properly alleges a conspiracy violation of § 2339A (Count I) if it alleges that the defendants conspired to provide material support knowing or intending that this support was to be used in preparation for, or in carrying out, a conspiracy to murder or maim.   The plain language of the

12

statute dictates that the defendant's knowledge of what the material support would be used for satisfies the mens rea element in § 2339A.

      2.   Count I of the Indictment properly alleges the mens rea element of 18 U.S.C. § 2339A

The Indictment alleges the defendants knew or intended the material support was to be used in preparation for, or in carrying out, a conspiracy to commit an act abroad that would constitute the offense of murder or maiming if committed in the special maritime and territorial jurisdiction of the United States.   The Indictment tracks the language of the statute, pleads sufficient facts to establish each element, and provides each defendant with sufficient notice to prepare a defense and prevent against double jeopardy, thus meeting the minimal constitutional standards. See United States v. Carter, 270 F.3d at 736; United States v. Sewell, 513 F.3d at 821 (citing Hamling, 418 U.S. at 117); United States v. Awad, 551 F.3d at 936; United States v. Resendiz-Ponce, 549 U.S. at 110.

The Indictment alleges the defendants also knew how the support and resources would be used.   The defendants intended the material support and resources they provided to co-defendant Ramiz Hodzic, and subsequently to Pazara and others, would be used to further the § 956(a) conspiracy.

As to Count I, the conspiracy to provide material support, Paragraph 2 tracks the language of the statute in reciting the mens rea element and introducing the § 2339A conspiracy. Specifically, the defendants all conspired to provide material support and resources,

> including: currency and monetary instruments (collectively "money"), and property to include: United States military uniforms, combat boots, military surplus goods, tactical gear and clothing, firearms accessories, optical equipment and range finders, rifle scopes, and equipment, knowing and intending that such money and property were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to commit at places outside of the United States acts that would constitute offenses

13

> [of] murder and maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy.

Indictment Count I, ¶ 2.

Providing further information regarding the § 956(a) conspiracy, Count I, Paragraph 4, specifically states:

> Abdullah Ramo Pazara and other[] persons known to the Grand Jury facilitated the conspiracy by travelling to Syria, Iraq, and elsewhere to . . . act as foreign fighters by participating in the ongoing conflict and otherwise engaging in acts of violence, including killing and maiming persons.

Indictment Count I, ¶ 4.   Paragraph 3 introduces the Manner and Means of the § 2339A conspiracy by stating that all of the defendants "used the following manner and means, among others, to accomplish the conspiracy," and "[i]n furtherance of the conspiracy, and to effect the illegal objects thereof."   Id. at ¶ 3.   As stated in Count I, Paragraph 2, the object of the § 2339A conspiracy was to provide material support and resources knowing and intending that such money and property were to be used in preparation for, and in carrying out, a violation of § 956(a).

Paragraph 5 then states that members of the conspiracy sought out supporters and solicited donations, "intending the money to be transferred to, and used in support of, Abdullah Ramo Pazara, and others known and unknown to the Grand Jury, who were fighting in Syria, Iraq, and elsewhere . . . ."   Id. at ¶ 5 (emphasis added).   As with other paragraphs in the Indictment, Paragraph 5 of Count I does not restate the statutory mens rea requirement.   It is clear from context that Paragraph 5's reference to "fighting" by Pazara (and the other recipients of the material support), refers to the same behavior as Paragraph 4's reference to "acts of violence, including killing and maiming persons."   Id. at ¶¶ 4-5 (emphasis added).   Therefore,

14

Paragraph 5 alleges that the defendants conspired to provide material support or resources intending that this support would be used in preparation for or in carrying out a conspiracy to murder or maim persons in a foreign country.

Paragraph 6 further refers to all members of the conspiracy contributing their own funds, "intending the money to be transferred to, and used in support of, Abdullah Ramo Pazara and others known and unknown to the Grand Jury who were fighting in Syria, Iraq and elsewhere." Id. at ¶ 6 (emphasis added).   It is clear from context that this reference to "fighting" has the same meaning as the reference in Paragraph 5.   Reading Paragraph 6 in light of the Indictment as a whole, as one must, Paragraph 6 therefore also properly alleges the mens rea element of the offense.   Various other paragraphs similarly allege that the defendants conspired to send material support, knowing or intending that the support would be used to support Pazara and others in their efforts fighting in Syria, Iraq, and elsewhere, referring to their acts of violence, including killing and maiming persons, as first described in Paragraph 4.   See, e.g., id. at ¶¶ 7-10.

With further specificity as to mens rea, Count I, paragraph 11 alleges that:

[d]uring the time period of the conspiracy, defendants Siki Ramiz Hodzic, Sedina Unkic Hodzic, Mediha Medy Salkicevic, Armin Harcevic, Jasminka Ramic, and Nihad Rosic, knew that Abdullah Ramo Pazara and others known and unknown to the Grand Jury were fighting in Syria, Iraq and elsewhere and that said individuals received materials, money, and supplies provided by the defendants while Abdullah Ramo Pazara and others were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to said Abdullah Ramo Pazara and others known and unknown would be used to support said individuals who were fighting with, and in support of the designated FTOs.

Indictment Count I, ¶ 11 (emphasis added).   Reading the sentence as a whole, the expression, "fighting with, and in support of" describes the same behavior as "conspiring to murder and maim persons."   Paragraph 11 of Count I, and the other paragraphs described here, allege the

15

mens rea element of the § 2339A conspiracy count because, read in context, they state that the defendants knew or intended that their material support or resources were to be used to prepare for or carry out offenses of murder or maiming.

Although not each of the cited paragraphs track the language of the statute verbatim, an indictment need not do so in order to be sufficiently pled.   The Indictment as a whole, and the mens rea element of § 2339A in particular, is pled in a manner that "apprises the defendant of the elements of the offenses charged, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense."   United States v. Henderson, 416 F.3d at 692 (citing Hamling, 418 U.S. at 117).   A reasonable construction of the cited paragraphs make plain the mens rea element of § 2339A and states facts supporting it.   See United States v. O'Hagan, 139 F.3d at 651.   As a result, the defendants' motions to dismiss on this argument should be denied.

3.   Count III of the Indictment properly alleges the mens rea element of 18 U.S.C. § 2339A

Count III, the substantive count of providing and attempting to provide material support or resources, also properly alleges the mens rea element of §2339A.   Whereas Count I alleges the conspiracy to provide material support, Count III alleges the provision or attempted provision of material support.

The allegations as to mens rea apply equally to Count I and Count III, because the question as to mens rea in Counts I and III are essentially the same.   As to Count I, the question is whether the Indictment alleges the defendants conspired to provide material support or resources knowing or intending that this support would be used in preparation for or in carrying out a conspiracy to murder or maim persons in a foreign country.   As to Count III, the question is whether the Indictment alleges the defendants actually provided or attempted to provide

16

material support or resources knowing or intending that this support would be used in preparation for or in carrying out a conspiracy to murder or maim persons in a foreign country. Count III, Paragraph 2 tracks the language of the statute in reciting the <u>mens rea</u> element. Count III, Paragraph 1 also re-alleges and incorporates by reference Count I, Paragraphs 3-48, including all the Paragraphs referenced in the preceding section of this filing.   Consequently, the Paragraphs described in the preceding section of this filing apply equally to Count III (substantive offense) as Count I (conspiracy).   The Indictment therefore properly alleges the <u>mens rea</u> element of the substantive Section 2339A offense in Count III.   The defendants' motions to dismiss should therefore be denied.

4. <u>The Indictment does not state, and the Government does not adopt, either a general intent standard or a "fungible theory" of material support</u>

Multiple defendants, and predominantly defendant Harcevic, argue that the factual allegations would support a violation of 18 U.S.C. § 2339B, providing material support or resources to designated foreign terrorist organizations, but not §2339A.[8]   The defense argument here is that the Indictment only alleges that the defendants provided the material support knowing or intending it would go to a member of a conspiracy to murder or maim, not that it would go to a member of that conspiracy knowing that the support would be used in preparation for, or in carrying out, the conspiracy to murder or maim.

When reading the Indictment as a whole, however, it is clear that the legal theory laid out in Paragraph 2 of Counts I and III meets the test of Section 2339A and is supported by facts provided in other paragraphs, such as Paragraphs 5-10.   Although these subsequent paragraphs do not each track the language of § 2339A, they provide factual support for the legal theory laid out by the Grand Jury in Paragraph 2.   This is true even if parts of the Indictment would also

---

[8] <u>See</u> Harcevic Mot. to Dismiss Mem. at 8; Sedina Unkic Hodzic Mot. to Dismiss Mem. at 9.

support a charge of § 2339B.   Read together, these paragraphs demonstrate factual support for the allegation that the defendants conspired to provide and did provide and attempt to provide material support or resources knowing or intending that this support would be used in preparation for or in carrying out a conspiracy to murder or maim persons in a foreign country.

The Government does not argue that any defendant is "to be tried on the general intent allegation that he intended to give support to Pazara with the knowledge that Pazara and others were fighting in Syria, Iraq and elsewhere."[9]   Nor does the Government argue that by providing support to Pazara and others the defendants are guilty because those funds are fungible and Pazara and others could have put that support toward their terrorist goals.[10]

The Government clearly acknowledges its burden, as set forth in Paragraph 2 of Counts I and III of the Indictment, to prove that the defendants conspired to provide (Count I), provided and attempted to provide (Count III) material support knowing or intending that such money and property were to be used in preparation for, or in carrying out, the overseas conspiracy to murder or maim.   See 18 U.S.C. § 2339A; see also Indictment Count I, ¶ 2.   The Government properly alleged this element, supported it with facts putting the defendants on notice, and will prove it at trial.   This is a "reasonable construction of the language in the indictment;" therefore, the Indictment has sufficiently pled the offense.   See United States v. O'Hagan, 139 F.3d at 651. There is no constitutional question along the lines that defendants contend when they argue that the Government is applying a general intent standard or "fungible theory" to § 2339A.

---

[9] See Harcevic Mot. to Dismiss Mem. at 11.

[10] See Harcevic Mot. to Dismiss Mem. at 13.

B.    The Indictment properly charges a conspiracy and does not allege multiple inchoate offenses

Defendants Ramiz Hodzic and Nihad Rosic argue that the Indictment is defective because it alleges a conspiracy to commit a conspiracy and improperly charges multi-level inchoate offenses.[11]   That is not the case.   Count I charges a conspiracy in violation of 18 U.S.C. § 2339A to commit a substantive violation of § 2339A.    A substantive § 2339A offense consists of providing material support or resources, knowing or intending that they will be used to facilitate any of several listed offenses. The listed offense alleged in Count I is a violation of 18 U.S.C. § 956(a)(1), which proscribes conspiring to murder, kidnap, or maim a person or persons in a foreign country.   Count III charges a substantive § 2339A offense based on the same § 956(a)(1) predicate.   The statute requires that the Government allege that material support was provided in furtherance of a specified unlawful offense and the Indictment tracks the language and intent of the statute.   The Indictment properly alleges, in the conjunctive, that defendants conspired to provide, and attempted to provide, material support and resources.   The Indictment simply alleges activities prohibited by the statute.

For support, the defendants cite to an article authored by Professor Ira Robbins.   The article is not controlling law of this Circuit, or otherwise.[12]   Robbins also does not refer to §2339A and does not disagree with the nature of the charges levied in this Indictment.   The Indictment here makes it clear that the defendants are not being charged with a conspiracy to conspire, a conspiracy to prepare to conspire or an attempt to attempt a conspiracy.   Rather, the

---

[11] See Defendant Hodzic Memo at 8-9; Defendant Rosic Memo at 5-9.   Defendants refer to this as a logical absurdity.

[12] The defendants cite to Wilson v. State, 53 Ga. 205 (1874).   The case is not persuasive in this Circuit, and it refers to an attempted assault, which is not charged here.   Further, the nature of the law has changed since the Wilson decision was rendered (reasoning that an assault is itself an attempt).

Indictment alleges that the defendants conspired to provide support to an existing conspiracy and to commit a substantive violation of § 2339A.   See United States v. Sattar, 314 F. Supp. 2d 279, 306 (E.D.N.Y. 2004); United States v. Awan, 459 F. Supp. 2d 167, 183 (2nd Cir. 2006) (reversed on other grounds).   Counts I and III are plainly authorized by federal statute.   Section 2339A makes it a crime for anyone who "attempts or conspires" to conduct the prohibited acts outlined in the statute.   The statute authorizes prosecution for a conspiracy to violate §2339A, as well as for a substantive §2339A offense predicated on a violation of §956(a)(1).   The defendants cannot claim, as they do, that they are not informed of what conduct is prohibited or what conduct constitutes the offense alleged such that they are unable to raise a defense.

The defendants' arguments rest on the characterization of the charges as a "conspiracy to prepare to commit another conspiracy."   Or a "conspiracy…to prepare… to commit conspiracy."   This is not a valid characterization.   A § 2339A violation is not in the nature of an attempt, and Count I does not charge the defendants with a "conspiracy to conspire" or "conspiracy to attempt."   Pursuant to § 2339A, anyone who provides material support or resources need not be attempting to commit the predicate crime.   That person may be completely indifferent to whether it is actually carried out.   Rather, to be guilty of §2339A, it is sufficient, that the person "know or intend" that the material support or resources will be used to commit the predicate crime.   Unlike some other 18 U.S.C. offenses, § 2339A itself prohibits anyone who "attempts or conspires to do such an act," that being to commit a substantive § 2339A offense.   See 18 U.S.C. § 2339A.

As is the case here, the fact that the listed offense on which the substantive § 2339A count is predicated is a conspiracy does not convert the charge into a "conspiracy to conspire." The object of the conspiracy charged in the Indictment is not the formation or carrying out of a

20

§956(a)(1) conspiracy, but rather the substantive act of providing or concealing material support or resources.   It is not an element of the charged § 2339A conspiracy that any defendant be a member of the § 956 conspiracy.   In fact, a defendant in this case need not even have an interest in whether the section 956(a)(1) conspiracy succeeds – so long as the defendant knows or intends that the material support and resources provided will be used to advance the conspiracy. See United States v. Townsend, 924 F.2d 1385, 1393 (7th Cir. 1991) (noting that a defendant can assist a conspiracy without joining it, "the landlord who rents an illegal gambling den").

By way of example, consider if persons A and B agree to commit murder.   Persons C and D agree, in turn, to sell a gun to A and B.   C and D may be indifferent to what A and B do with it, but they know that A and B plan to use the gun in the homicide.   The Government then prosecutes C and D for conspiring with each other to sell the gun to A and B for use in the murder.   It could not seriously be contended that, in order to prove its case, the Government must show that C and D were members of the conspiracy to kill A and B's victim.   Likewise here, a defendant need not be a member of the § 956(a)(1) conspiracy in order to conspire to provide that conspiracy with material support or resources.   The fact that A and B's and C and D's crimes are separate conspiracies would not preclude the Government from prosecuting C and D for conspiring to provide the gun.   It would also not make the charge a "conspiracy to conspire."

Courts of appeal have uniformly rejected claims similar to ones asserted by the defendants in the context of the federal RICO statute, 18 U.S.C. § 1961.   Pursuant to 18 U.S.C. § 1962(d), it is a crime to conspire to violate the substantive RICO provisions, including 18 U.S.C. § 1962(c).   The latter statute prohibits "conduct[ing] or participat[ing] ... in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."   The predicate acts of

racketeering that may support a RICO charge include conspiracies to commit various offenses enumerated in section 1961(1).    See, e.g., United States v. Darden, 70 F.3d 1507, 1524-1525 (8th Cir. 1995); United States v. Ruggiero, 726 F.2d 913, 918 (2d Cir. 1984); United States v. Pungitore, 910 F.2d 1084, 1135 (3d Cir. 1990).   In rejecting claims of "conspiracy to conspire," courts have explained that "[t]he essence of a RICO conspiracy is not an agreement to commit racketeering acts, but an agreement to conduct or participate in the affairs of an enterprise through a pattern of racketeering activities."   United States v. Brooklier, 685 F.2d 1208, 1216 (9th Cir. 1982).   They have stressed that "the RICO conspiracy and the predicate conspiracy are distinct offenses with entirely different objectives" – first, to advance the enterprise, and the second, to commit a particular substantive offense.   United States v. Pungitore, 910 F.2d at 1135.   Likewise, the essence of a § 2339A conspiracy is an agreement to commit a substantive § 2339A offense, not an agreement to murder, kidnap or maim a person in a foreign country, in violation of § 956(a)(1).

The defendants claim that the Indictment impermissibly charges a double inchoate offense, the offense of "preparation of the commission of another conspiracy," or "conspiracy to prepare to commit another conspiracy." [13]   This is incorrect.   A substantive violation of § 2339A offense contains no element of inchoateness. [14]   As discussed above, a substantive § 2339A offense, is not in the nature of an attempt; rather, it is a completed offense in-and-of itself.   To commit the offense, even when the predicate crime is a conspiracy, a defendant does not have to conspire or seek to conspire with anyone to do anything.   The defendant does not

---

[13]  See Defendant Rosic Memo at 8; Defendant Hodzic Memo at 8.

[14]  Inchoate crimes are generally considered incomplete crimes which must be connected to a substantive crime to obtain a conviction.   Examples include conspiracy, solicitation, and attempt to commit a crime, when the crime has not been completed.

have to be a member of the predicate conspiracy or have an interest in its success.   Rather, the defendant must know or intend that the material support or resources provided will be used by or in furtherance of the conspiracy.   The fact that the predicate offense happens to be a conspiracy does not render inchoate the otherwise substantive offense of using or carrying a firearm during or in relation to a drug offense or crime of violence (18 U.S.C. § 924(c)).   Similarly, in this case, a § 2339A offense is not rendered inchoate when the recipients of the material support or resources (in this case Pazara and other co-conspirators fighting in Syria) happen to be engaged in a conspiracy.   As for the claim that a substantive § 2339A charge predicated on a § 956(a)(1) conspiracy is also impermissibly inchoate, the court stated that that is "simply wrong" because "a substantive violation of 18 U.S.C. § 2339A . . . is not an inchoate offense." Id. at 305; see also United States v. Al-Hussayen, Cause No. CR03-048-C-EJL (District Court found dismissal of a §371 conspiracy to violate § 2339A based upon § 956 was not warranted).

In United States v. Sattar, 314 F. Supp. 2d 279 (S.D.N.Y. 2004), the court held that charging a § 371 conspiracy to commit a § 2339A offense, predicated on a § 956(a)(1) conspiracy is "not a double or triple inchoate offense."   The object of the conspiracy alleged . . . is a violation of § 2339A, not the commission of another inchoate offense. Id. at 306.   "The fact that [the defendants] are alleged . . . to have conspired to provide material support to a conspiracy to violate 18 U.S.C. § 956 does not make [it] a double inchoate offense. Id.   "The fact that another conspiracy is involved in the proof [of the offense] does not provide any basis to dismiss [the charge]."   Id.   In summary, multiple other courts have reviewed and ruled on the same arguments raised by the defendants' in this case.   They have uniformly found that charges such as the nature of those levied in this Indictment are proper and should not be dismissed.

C.    The Indictment need not allege facts identifying specific support for a specific Foreign Terrorist Organization in a prosecution under 18 U.S.C. § 2339A

Defendant Mediha Medy Salkicevic argues that the Indictment needs to provide additional facts regarding when, where, and for whom Pazara fought in Syria, in order to equip any defendant "to determine how to defend against an allegation that giving money to a United States citizen in the United States constitutes the knowing and intentional support for a conspiracy to commit murder in Syria, in support of Foreign Terrorist Organizations . . . ."[15] This statement of law, however, misapprehends the charges now pending.   The allegation is that the defendants conspired to, attempted to, and did provide material support and resources not to a designated FTO, but to persons engaged in a "conspiracy to commit at places outside of the United States acts that would constitute offenses [of] murder and maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy."    Indictment Count I, ¶ 2.

Although the Indictment mentions FTO's in order to provide context for the Section 956(a) conspiracy, the grand jury did not need to find and the Government does not need to prove that the defendants had any knowledge about a designated FTO.   This is one of several distinctions between Sections 2339A and 2339B.   To the extent the defendants contend the Indictment provides insufficient notice as to the scope, purpose, and facts surrounding the Section 956(a) conspiracy, this argument is addressed supra.   Absent a superseding charge under 18 U.S.C. § 2339B, the Government need not allege or prove that the defendants provided

---

[15] Salkicevic Mot. to Dismiss Mem. at 9.

material support for a particular FTO.[16]

        D.    The Indictment alleges facts sufficient to identify the object of the § 956 conspiracy

           1.   The Indictment alleges facts that constitute conspiracy to murder and maim persons abroad

The defendants have argued that the Indictment fails to allege facts sufficient to identify the object of the § 956 conspiracy, specifically facts that constitute murder and maiming persons abroad.   A plain reading of the Indictment demonstrates this is not the case.

As noted supra, Count I paragraph 2 specifically alleges that the conspirators agreed to provide material support knowing or intending "that such money and property were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to commit at places outside of the United States acts that would constitute offenses of murder and maiming if committed in the special maritime and territorial jurisdiction of the United States."   Indictment Count I, ¶ 2 (emphasis added).   Count III makes the same allegation. Count I, paragraph 4 also alleges that, "Abdullah Ramo Pazara and others persons

---

[16] Ramiz Hodzic states in his Motion, "Although the title to section 2339A is 'Providing material support to terrorists,' the title is not an element. Neither section 956(a) nor section 2339A use the words 'terrorist' or 'terrorism.' . . . [S]ection 2339A's elements can be stated without any reference to terrorists or terrorism.   Moreover, section 2339A does not require that material support be given to a designated foreign terrorist organization . . . ."   Ramiz Hodzic Mot. to Dismiss at 2-3. That Motion also states, "[T]he government need prove nothing about terrorism or terrorist acts to obtain a conviction under section 956(a)."   Id. at 4.

    On these points, the Government agrees.   The Government is not required to prove a connection to an FTO (as defined in 18 U.S.C. § 2339B) or international terrorism (as defined in 18 U.S.C. § 2331) in order to carry its burden under §§ 2339A and 956(a).   At trial, pieces of evidence that contribute to proving mens rea of the charged offenses could show connections to an FTO or to international terrorism, but only as a theory of proving an element of the offenses charged.   The Indictment is not deficient for lack of alleging a connection to a particular FTO or specific terrorist act.

    Further, Nihad Rosic argues that, "In order to commit a crime, an individual must do more than support an FTO's objectives – they must provide that support coordinated with or under the direction and control of the FTO."   Rosic Mot. to Dismiss Mem. at 15.   This statement is similarly inapposite because the Government has not charged § 2339B.

known to the Grand Jury facilitated the conspiracy by travelling to Syria, Iraq, and elsewhere to support the designated FTOs and act as foreign fighters by participating in the ongoing conflict and otherwise engaging in acts of violence, to includ[e] killing and maiming persons."   Indictment Count I, ¶ 4 (emphasis added).

The Manner and Means section of Count I of the Indictment, and incorporated into Counts II and III, alleges specific factual examples of murder and maiming.   For example, Paragraph 39 alleges that Pazara informed "an individual known to the grand jury that he had just returned from a mission where [his unit] captured a large area, killed eleven individuals, captured one, and added that they intended to slaughter the prisoner the following day."   Indictment Count I, ¶ 39. Similarly, the Indictment alleges that defendant Ramiz Hodzic promised to provide defendant Rosic with military equipment to fight in Syria, including "a night vision optic with a built-in camera" that Rosic could use to record killings.   Id. at ¶ 42.   Paragraph 40 of Count I alleges that defendant Ramiz Hodzic told defendant Nihad Rosic that "five good snipers could do wonders there (Syria); that he watched a video of 'ours' in trenches and in warfare; that 'ours' downed five and slaughtered them; and, that he watched the sharia punishment of a beheading."   Id. at ¶ 40.

2.   The Indictment need not allege a specific target or victim of the § 956 conspiracy

Some of the defendants argue that the Indictment fails to put the defendants on notice as to who was the target of the conspiracy to murder and maim as well as location, timing, and nature of the harm.[17]   This argument does not provide a basis for dismissing the Indictment and the defendants do not cite to any authority for their premise.   The Indictment does charge a specific time frame and location.   It does not have to go further and identify a specific victim.

---

[17] Ramiz Hodzic Mot. to Dismiss Mem. at 11-12; Salkicevic Mot. to Dismiss Mem. at 8; Rosic Mot. to Dismiss Mem. at 12.

Moreover, the Government is not required to trace the defendants' money or intent to a specific murder, maiming, or destruction of specific property.   The intent of the defendants is alleged, and demonstrated, by their respective knowledge of the activities of those to whom they provided support, namely Pazara and other conspirators, and knowledge of how their contributions would be used.   The Indictment factually alleges that he and other members of the conspiracy engaged in murder, maiming, and other violent acts.   As shown in the cases outlined below, such allegations are sufficient.

In United States v. Stewart, 590 F.3d at 116, the court upheld a § 2339A conviction for providing support to undermine a ceasefire between insurgents and government forces, and to compose a fatwa exhorting "the killing [of] Jews wherever they are." See also United States v. Jayyousi, 657 F.3d 1085, 1105 (finding general knowledge and intent to support "mujahideen who [are] engaged in "murder [and] maiming" sufficient specific intent to uphold a conviction under § 2339A).   Similarly, in Wultz v. Islamic Republic of Iran, 755 F. Supp. 2d 1, 46 (D.D.C. 2010), the court found that the plaintiffs "need only allege that [the defendants] provided [material support] knowing or intending that such provision would generally facilitate the terrorist activities of the [supported terrorist group]."   The present Indictment certainly places the defendants on notice of the alleged criminal offenses.

Similarly, § "956 does not require that an indictment allege the identities of contemplated victims or the specific location outside the United States where the contemplated killing, kidnapping, or maiming is to occur."   United States v. Sattar, 314 F. Supp. 2d 279, 304 (S.D.N.Y. 2004); cf. United States v. Salameh, 152 F.3d 88, 154 n.16 (noting that, to prove bombing conspiracy under statutes referring to crimes against "any" building, vehicle, or property, Government was not required to prove that defendant "agreed to bomb a 'populated structure in an

urban area," because "[n]one of the four criminal objectives charged in the indictment required the Government to prove that the defendant was aware of the specific target of the bombing"). Nor are these specific facts an essential element of the crime charged. See United States v. Wharton, 320 F.3d 526, 537-38 (5th Cir. 2003). Based on these cases, the Court should reject the basis of this claim to dismiss the Indictment.

### 3. The Indictment's use of the word "fighting" is sufficiently described to allow the defendants to determine its meaning

Further to their argument that the Indictment should be dismissed, defendants argue that the term "fighting" in the Indictment is not sufficiently described to ascertain its meaning.   The only law defendants cite in support of this claim is United States v. Awan, which granted the defendant's motion to dismiss an indictment, without prejudice, for conspiracy to commit "murders" overseas in violation of § 956 because "murders" lacked specificity.   Awan, 459 F. Supp. 2d 167, 175-76 (E.D.N.Y. 2006).   The defendants' reliance on Awan is misplaced.

The district court in Awan originally dismissed the § 956 (as well as the § 2339A) charges because the indictment lacked any facts supporting the alleged criminal violations, rendering it nonspecific.   See Awan, 459 F. Supp. 2d 173, 175-76.   The original indictment in Awan had a single paragraph each for the counts of violating §§ 956 and 2339A, which only repeated the phrases "material support," "murder," and "maim," without any factual allegations to support the charges. Id. at 173. The Second Circuit later upheld Awan's conviction under a superseding indictment that used the same generic "maiming and murdering" language, but alleged an additional fact, regarding the violent conduct, that the terrorist group "engaged in a series of bombings, kidnappings and murders in India."   Superseding Indictment at ¶ 3, United States v. Awan, 2006 WL 4692867, Doc. No. 06-154 (S-2) (CPS) (E.D.N.Y. Oct. 23, 2006) (conviction affirmed by United States v. Awan, 384 F. App'x 9 (2nd Cir. 2010).

Compared with the superseding indictment in <u>Awan</u>, the Indictment in this case alleges significantly more facts regarding the conspiracy to murder and maim, running to 18 pages, with 46 paragraphs of factual allegations in Count I that were incorporated into Counts I and III.   As the court required in <u>Awan</u>, the Indictment here names specific conduct that is prohibited by § 956, and, unlike the indictment in Awan, the Indictment in this case provides detailed specificity to put the defendants on notice of the prohibited conduct underlying the charges against them.   See <u>Awan</u>, 459 F. Supp. 2d at 175-76, 181-82.   The Indictment here describes such activities as killing eleven people, intending to "slaughter" a prisoner, "slaughtering" five more people, and "beheading."   Indictment Count I, ¶¶ 39-40, 42.

Furthermore, "[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made." <u>United States v. Stavroulakis</u>, 952 F.2d 686, 693 (2d Cir. 1992) (citing <u>Russell v. United States</u>, 369 U.S. 749, 763–64, (quoting <u>United States v. Silverman</u>, 430 F.2d 106, 111 (2d Cir. 1970)); <u>see also</u>, <u>United States v. Sattar</u>, 272 F. Supp. 2d 348, 373.   When the Indictment is read as whole, it provides ample contextual grounding for the term "fighting." See <u>United States v. Awad</u>, 551 F.3d 930, 935-936 (9th Cir. 2009).   The bare use of "fighting" without any supporting factual allegations might lack specificity, but such is not the case with this Indictment.

In addition to the facts above, the Indictment alleges that several of the defendants described uses for their material support which further specified the conduct at issue.   For example defendant Salkicevic hoped that sniper rifle scopes the conspirators provided would be "put . . . to good use."   Indictment Count I, ¶ 30.   Defendant Ramiz Hodzic "told defendant Nihad Rosic that five good snipers could do wonders" in Syria.   <u>Id.</u> at ¶ 40.   When defendant Rosic traveled to Syria, he could use "a night vision optic with a built-in camera" to record every

29

time he killed someone.   Id. at ¶ 42.   The Indictment alleges that defendants communicated in coded language about "infidels" and "Shaheed[s]" as well as references to "weapons, ammunition, explosives, training, fighting, and violent activities of the designated FTOs."   Id. at ¶ 14.[18]   When reading the factual allegations, the court interprets the Indictment "to include facts which are necessarily implied" by those explicitly pled. United States v. Livingston, 725 F.3d 1141, 1148 (9th Cir. 2013).   The context provided by these and other statements in the Indictment clearly suggests the § 956 conspirators were planning the unlawful killing of a human being with malice aforethought.   Necessarily implied by sniper scopes being "put to good use" and snipers "doing wonders," in this context, is maiming or murdering, as those are the natural purpose for which sniper rifles are used.   When read as a whole, the Indictment describes the use of violence to maim or murder, squarely within the terms of § 956.   See Livingston, 725 F.3d at 1148.

An indictment need not plead all of the facts the Government intends to present at trial, only those "essential facts constituting the offense charged." United States v. Resendiz-Ponce, 549 U.S. 102, 110 (2007) (quoting Fed. Rule of Crim. Proc. 7(c)(1)); United States v. Mancuso, 718 F.3d 780, 790 (9th Cir. 2013) (holding an indictment "need not specify the theories or evidence upon which the Government will rely to prove [the alleged] facts").   When reviewing an indictment, the court accepts "the government's allegations as true." United States v. Steffen, 687 F.3d 1104, 1007 n.2 (8th Cir. 2012).   The court does not review whether the indictment "could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." United States v. Awad, 551 F.3d 930, 935 (9th Cir. 2009) (internal quotation and citation omitted).   An indictment "must be read in its entirety and construed with common sense

---

[18] Shaheed is a reference to an individual killed (martyred) while engaged in jihad.

and practicality."   Id. at 936. See also United States v. Maggitt, 784 F.2d 590, 598 (5th Cir. 1986) ("An indictment is to be read in the light of its purpose, which is to inform the accused of the charges," and its "validity is governed by practical, not technical, considerations.").   When read in its entirety and with common sense and practicality, there are clearly reasonable constructions of the alleged facts that can be made to charge the § 2339A and § 956 offenses.

Notably, most of the support provided by the defendants was military materials, which are explicitly used for maiming and murdering: "tactical gear and clothing, firearms accessories, optical equipment and range finders, [and] rifle scopes." Indictment Count I, ¶ 7; see also ¶¶ 8, 14, 20, 21, 29, 31. Collectively all of these allegations contained in the Indictment, when read in context, plainly refer to individuals who have been, or are intended to be maimed or murdered in acts of violence.

In summary, the Indictment levies more than sufficient allegations concerning how the conspirators intended their support would be used.   It also specifically alleges what the conspirators knew about the use of their collective support.   As noted, Defendant Harcevic's arguments are more properly meant for the jury's consideration of the evidence, not the sufficiency of the Indictment.   The defendants may dispute the facts, but there is no doubt that the allegations in Counts I and III are sufficient because they contain all of the essential elements of the offense charged, fairly inform the defendants of the charges against which they must defend, and allege sufficient information to allow each defendant to plead a conviction or acquittal as a bar to subsequent prosecution.

E.    Lawful Combatant Immunity Claims

The defendants each attempt to raise some version of the affirmative defense of lawful combatant immunity.[19]   However, no obligation exists to present an affirmative defense to the Grand Jury.   "Supreme Court precedent establishes that an indictment need not anticipate affirmative defenses, and therefore, the grand jury need not determine whether probable cause has been negated by a potential affirmative defense of the Defendants."   United States v. Clark, 2011 WL 2015224 at *3 (D. Minn. April 15, 2011) (citing to United States v. Sisson, 399 U.S. 267 (1970); other citations omitted).   Likewise, no obligation exists to disprove the affirmative defense within the four corners of the Indictment.   United States v. Sisson, 399 U.S. 267, 288 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses.").

Lawful combatant immunity is an affirmative defense, and the defendant must raise and prove all elements to be entitled to protection from prosecution. United States v. Lindh, 212 F. Supp. 2d 541, 557 (E.D. Va. 2002).   The Court's initial inquiry should be whether the conspirators were members of the military forces of a party to the Geneva Convention Relative to the Treatment of Prisoners of War (GPW) and that force must be engaged in an armed conflict with the United States.   United States v. Pineda, 2006 WL 785287, at *3 (D.D.C. Mar 28, 2006).   Additionally, in order to qualify for this lawful combatant immunity, a defendant must show he was a lawful combatant in that conflict, and his acts were in furtherance of the conflict and not in violation of the law of war.   United States v. Lindh, 212 F. Supp. 2d at 557.

---

[19] Hodzic Mot. to Dismiss Mem. at 10, 12; Harcevic Mot. to Dismiss Mem. at 6, 17-20; Rosic Mot. to Dismiss Mem. at 15-16; Salkicevic Mot. to Dismiss Mem. at 11-12; Sedina Hodzic Mot. to Dismiss Mem. at 13-14.

Although immunity based on lawful combatant status may be available as an affirmative defense to criminal prosecution in appropriate circumstances, this defense is not available to a defendant just because he believes that he has justly taken up arms in a conflict.  Id. at 554.   In any event, the GPW does not afford individual defendants any judicially enforceable rights or legal defenses, since it is well recognized that international agreements do not establish private rights actionable in domestic courts.  See Johnson v. Eisentrager, 339 U.S. 763, 789 n.14 (1950); see also Medellin v. Texas, 552 U.S 491, 506 n.3 (2008); Hamdi v. Rumsfeld, 316 F.3d 450, 468 (4th Cir. 2003), vacated and remanded on unrelated grounds, 542 U.S. 507 (2004); Tel-Oren v. Libyan Arab Rep., 726 F.2d 774, 809 (D.C. Cir. 1984).

The defendants further claim that the Indictment does not outline sufficient facts for them to determine if they qualify for immunity and thus the Indictment must be dismissed.  For example, Harcevic argues that the term "fighting" in the Indictment refers generically to armed conflict and that "without more specific allegations about the alleged 'fighting' it cannot be ascertained whether the basis of the Grand Jury's decision was an agreement to conduct lawful killing incident to armed conflict or murder."[20]   Similarly, Salkicevic alleges that, "[i]n this case insufficient facts are alleged to determine with whom Abdullah Pazara was operating at any relevant time, in order to determine whether he was part of a military organization and acting under the orders of a superior."[21]   Likewise, Rosic cites to United States v. Yunis, 924 F.2d 1086, 1097 (D.C. Cir. 1991) in support of his claim that "whether or not combat activities are privileged is dependent on whether the combatants generally conduct their operation in

---

[20] Harcevic Mot. to Dismiss Mem. at 6.

[21] Salkicevic Mot. to Dismiss Mem. at 11-12.

accordance with the law of war."[22]

However, Harcevic candidly admits that the "defense of combatant immunity is a mixed question of law and facts generally determined by the Court," and "cannot be resolved without fact finding" conducted pursuant to discovery.[23]   As Harcevic indicates, a determination of whether an individual is a privileged combatant and afforded combatant immunity is an intensely fact-based inquiry, requiring a court to determine how the individuals' activities and the activities of the force with which the individual is fighting match up with four flexible factors.[24] See GPW, art. 4(A)(2), Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135; Al-Marri v. Pucciarelli, 534 F.3d 213, 228 (4th Cir. 2008); United States v. Lindh, 212 F. Supp. 2d at 553-54; United States v. Hamidullin, 2015 WL 4241397, *14 (E.D.V.A. 2015).

Neither Pazara, nor any of the conspirators who were part of the alleged conspiracy, and who received material support and resources, were "a member of the military forces of a party to the GPW."   Similarly, their activities and forces were not engaged "in an armed conflict with the United States."   Foreign fighters such as Pazara and others who received material support from members of the alleged conspiracy who were operating in Syria are not a signatory to the GPW, and thus their conflicts are not covered by the GPW protections.   Further, their armed conflict is arguably internal and independent of the United States, making the GPW protections even less applicable.   Membership in a band of armed terrorists or criminals is manifestly not

---

[22] Rosic Mot. to Dismiss Mem. at 16.

[23] Harcevic Mot. to Dismiss Mem. at 19-20.

[24] For a defendant to use and a person to qualify for lawful combatant status, their military organization must meet four criteria: (1) the organization must be commanded by a person responsible for his subordinates (2) the organization's members must have a fixed distinctive emblem or uniform recognizable at a distance, (3) the organization's members must carry arms openly; and (4) the organization's members must conduct their operations in accordance with the laws and customs of war.   United States v. Lindh, 212 F. Supp. 2d 541, 557 (E.D. Va. 2002).

sufficient to qualify for assertion of the defense.   See United States v. Pineda, 348 F. App'x 591, 592 (D.C. Cir. 2009).   Because the conflict that Defendants supported is not covered by the GPW, the GPW provisions reflecting the right to combatant immunity do not apply.

Even if the defendants were somehow able to show that Pazara and others were members of the military forces of a GPW signatory engaged in armed conflict against the United States, they must also show that he was a lawful combatant to be entitled to lawful combatant immunity under the GPW.    Again, they cannot accomplish that.

Foreign fighters in Syria such as Pazara and those who received the material support and resources from the conspirators, clearly fail to meet the four criteria required for lawful combatant status.    There was no accountable organizational structure, and often their forces did not wear a recognizable emblem or uniform.    Indeed, as the Indictment alleges and at trial, the Government's evidence would show, that Pazara and those he fought with received surplus United States military uniforms and gear.    Also, although the fighters such as Pazara and other conspirators who received support from their fellow conspirators generally carried weapons and firearms openly, this was not always the case.    Finally, their organization frequently and gruesomely violated the laws and customs of war, disregarding proportionality, treatment of prisoners, and care for civilians.    At trial the Government's evidence would show that the persons the conspirators supported committed gross and frequent violations of humanitarian law. Their treatment of prisoners, other fighters, lack of care for civilian casualties and overall tactics violated generally recognized international laws of war. See, e.g., Geneva Convention Relative to the Treatment of Civilian Persons art. 3, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287. Because of this failure to qualify for lawful combatant status, defendants cannot rely on the GPW's lawful combatant immunity.

Because this Court has explicitly requested the submission of motions that do not require the finding of facts, and because a lawful combatant defense is an intensely fact-specific inquiry, it is inappropriately pled at this pre-trial stage and thus fails.   Additionally, there is no requirement to present an affirmative defense to a Grand Jury nor allege it in an indictment.   As such, defendants' claim to dismiss the Indictment on these grounds also fails.

F.   United States Government foreign policy and involvement in the Syrian Conflict is not germane

The defendants refer to United States foreign policy and purported aid to forces fighting in the Syrian conflict.[25]   For example, Defendant Salkicevic refers to numerous developments in the Syrian crisis as well as individuals and groups that were, and are, participating in the conflict. However, none of the rhetoric advanced by the defendants on these issues, whether true or not, indicates how or why United States foreign policy prevents the defendants from understanding the charges, present a defense, or impairing their ability to plead double jeopardy in a future prosecution.   Similarly, there is no indication from these arguments that the Indictment does not sufficiently state a claim as required by Federal R. Crim. Pro 7.

It carries no force to argue that the charges levied in this Indictment are in some manner deficient because the United States pursues foreign policy that may include advice, money, support, or foreign policy direction to entities involved in the Syrian conflict.

**CONCLUSION**

Counts I and III track the language of the statute and state the essential elements of the offense.   By tracking the language of 18 U.S.C. § 2339A and providing factual bases for the charges, both counts satisfy the well-established pleading requirements in this Circuit.   The law

---

[25] Defendant Hodzic Mot. to Dismiss Mem. at 6-7; Defendant Salkicevic Mot. to Dismiss Mem. at 5-8.

of this circuit does not require that an indictment allege all possible factual and evidentiary bases to ascertain a defendant's intent and knowledge.   The Supreme Court and the laws of this Circuit make it clear that an indictment is sufficient if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and equips the defendant to make a later double jeopardy argument.   The present Indictment meets those standards.

WHEREFORE, for all of the foregoing reasons, the Government respectfully requests this Honorable Court deny the defendants' Motions to Dismiss

Respectfully Submitted,

RICHARD G. CALLAHAN
United States Attorney


*/s/ Mara M. Kohn*
MARA M. KOHN, 2281SD
Trial Attorney - NSD/Department of Justice
Counterterrorism Section
Mara.Kohn2@usdoj.gov

*/s/ Joshua D. Champagne*
JOSHUA D. CHAMPAGNE – 85743 VA, 1013246 DC
Trial Attorney - NSD/Department of Justice
Counterterrorism Section
Joshua.Champagne@usdoj.gov

*/s/ Howard Marcus*
HOWARD MARCUS -
Assistant United States Attorney

*/s/ Matthew T. Drake*
MATTHEW T. DRAKE – 46499MO
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ Mara M. Kohn
MARA M. KOHN, 2281SD
Trial Attorney - NSD/Department of Justice
Counterterrorism Section
Mara.Kohn2@usdoj.gov

/s/ Joshua D. Champagne
JOSHUA D. CHAMPAGNE – 85743 VA, 1013246 DC
Trial Attorney - NSD/Department of Justice
Counterterrorism Section
Joshua.Champagne@usdoj.gov

/s/ Howard Marcus
HOWARD MARCUS -
Assistant United States Attorney

/s/ Matthew T. Drake
MATTHEW T. DRAKE – 46499MO
Assistant United States Attorney