**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,       )
                                   )
                 Plaintiff,    )
                                   )
    v.                           ) No. 4:15-CR-49-CDP
                                   )
RAMIZ ZIJAD HODZIC,           )
                                   )
                 Defendant.    )

**SENTENCING HEARING**

**BEFORE THE HONORABLE CATHERINE D. PERRY**
**UNITED STATES DISTRICT JUDGE**

**NOVEMBER 14, 2019**

**APPEARANCES:**
**For Plaintiff:**      **Matthew T. Drake, AUSA**
                     **Howard J. Marcus, AUSA**
                     **OFFICE OF THE U.S. ATTORNEY**
                     **111 South Tenth Street, 20th Floor**
                     **St. Louis, MO  63102**

                     **David C. Smith**
                     **Trial Attorney, Counterterrorism Section**
                     **U.S. DEPARTMENT OF JUSTICE**
                     **950 Pennsylvania Avenue, NW**
                     **Washington, DC  20530**

**For Defendant:**     **Diane Dragan, AFPD**
                     **Robert Wolfrum, AFPD**
                     **OFFICE OF THE FEDERAL PUBLIC DEFENDER**
                     **1010 Market Street, Suite 200**
                     **St. Louis, MO  63101**

*REPORTED BY:*       *Gayle D. Madden, CSR, RDR, CRR*
                     *Official Court Reporter*
                     *United States District Court*
                     *111 South Tenth Street, Third Floor*
                     *St. Louis, MO  63102    (314) 244-7987*
          *(Produced by computer-aided mechanical stenography.)*

1      (Proceedings commenced at 12:01 p.m.)

2      (The following proceedings were held in open court and

3  with the Defendant present.)

4          THE COURT:  All right.  We are here in the case of

5  United States of America versus Ramiz Hodzic.  This is

6  Case No. 4:15-CR-49, and the Defendant is here in person and

7  with his attorneys, Ms. Dragan and Mr. Wolfrum, and the United

8  States is here through Mr. Drake and Mr. Smith and Mr. Marcus.

9  So we are here for sentencing, and it's a continuation because

10 we had the first hearing some time ago.  Is there anything --

11 is either side intending to present any evidence?  I assume

12 there's not any evidence.

13          MS. DRAGAN:  No, Your Honor.

14          MR. DRAKE:  No, Your Honor.

15          THE COURT:  All right.  And I did receive from the

16 defense yesterday a DVD that had a statement of the Defendant

17 along with a transcript of that.  I've reviewed that.  Do you

18 know, Ms. Dragan, if you have filed that in the court file?

19          MS. DRAGAN:  I believe that we filed the -- the --

20          THE COURT:  Transcript?

21          MS. DRAGAN:  I don't know if the transcript got

22 filed.  I think we filed a photocopy of the video, which is

23 what they told us originally to do.

24          THE COURT:  Okay.

25          MS. DRAGAN:  I'm happy to file the transcript also.

1        THE COURT:  Yeah, if you'll file the transcript, and

2   then I'll have the copy of the video that you gave me placed

3   in the court file.  They'll -- they'll -- you know, they

4   keep --

5        MS. DRAGAN:  Sure.

6        THE COURT:  -- physical exhibits from time to time.

7   So they'll do that.  I'll figure out how we're going to do

8   that.

9        MS. DRAGAN:  I'll do that, Your Honor.

10        THE COURT:  But if you'll file the transcript, I'd

11   appreciate that.

12        Mr. Hodzic, I know you've been here before, and we

13   had the first part of the sentencing hearing earlier along

14   with your Codefendants.  Did you have a -- have you been able

15   to go over the Presentence Report that was filed in the case

16   and discuss it with your lawyer?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  Okay.  And, obviously, she's filed a lot

19   of documents, including objections to that report as well as a

20   sentencing memorandum and a number of letters.  Is there

21   anything other than the things she's raised that you wanted

22   her to raise?

23        (Defendant and his attorney conferred.)

24        THE DEFENDANT:  No, Your Honor.

25        THE COURT:  Okay.  So are you satisfied with her

4

1   representation of you?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Okay.  So the -- at the last hearing, I

4   did rule on most of the objections but not actually all of

5   them, I think.  The -- there was one piece of the Presentence

6   Report that I directed -- one paragraph that I directed the

7   Probation Office to change, and they did change that in the

8   final report that was filed on October 11th.

9            So as I look at your objections -- I know the

10  Government filed a response to all the objections, but I think

11  I had ruled on most of them with the exception of the -- the

12  issues where you had argued that a -- both a variance or a

13  departure were appropriate in the case, and I don't know what

14  else you -- and those are things, I think, that are more

15  appropriate for allocution or discussion here today than

16  for -- than as actual objections to the Presentence Report.

17           Is there anything else that you think I still need to

18  rule on?  I didn't adopt all of the paragraphs as my findings

19  of fact, but I am actually prepared to do so.  I went through

20  the transcripts and everything, and I think really I did rule

21  on everything substantive.  Do you want to discuss those

22  briefly or go over them anymore?

23           MS. DRAGAN:  Your Honor, I think that you did rule on

24  all the substantive changes.  Some of the objections, we

25  really just wanted the Court to understand that the support

1   wasn't going to, you know, multiple different agencies and

2   people, although we agree that Abdullah Pazara was sharing the

3   resources then.  That's, I think, one of the things we wanted

4   to be clear is that the support was all going to him knowing

5   that the people with him would also receive some of that

6   support.

7            THE COURT:  Right.  And I think I do understand that,

8   and I think that is clear.  So to the extent I haven't already

9   done that, with the exception of the objection that was

10  changed, which was to paragraph 45 of the Presentence

11  Report -- it was paragraph 9 of the objections -- the other

12  objections are overruled.  Although the arguments about

13  variance and departure, I think, are good arguments, I think

14  the nature of the guidelines applying in this case are such

15  that there could be, in many, many cases, a basis for either a

16  departure or a variance, and so I do understand that, but we

17  need to discuss that as part of allocution.  So I am otherwise

18  overruling all of the objections to the Presentence Report.

19           We do have a procedure in this court where in every

20  sentencing hearing we have a nonpublic portion of the hearing.

21  We're going to do that now, and the way that works is the

22  lawyers will put on some masking noise so the audience won't

23  be able to hear what we're saying.  I know there are a lot of

24  family members and others in the audience here and also a lot

25  of people, but -- so you won't be able to hear this part, but,

6

1   Mr. Hodzic, you'll be able to hear us when you put that

2   headset on.  Okay?

3           THE DEFENDANT:  Yes, Your Honor.

4       (Pursuant to Local Rule 13.05, a bench conference was

5   held on the record and placed under seal, after which the

6   following proceedings were held in open court.)

7           THE COURT:  All right.  Then returning to the public

8   record, I will hear, Ms. Dragan, anything you wish to say on

9   your client's behalf.  I did read -- you know, you had a lot

10  of letters, and it's clear from the letters as well as from

11  family members and others being here today that your client

12  does have a lot of support in the community.  I just -- I have

13  seen that, so -- but I'll hear anything else you wish to say.

14          MS. DRAGAN:  Thank you, Your Honor, and I know you

15  take very careful your duty, and I know you read the

16  sentencing memorandum, which discussed a lot of the things

17  that I wanted to tell the Court, and you watched the video.

18  As you know, this case has been going on for five years.  I've

19  gotten a lot of time to know Mr. Hodzic.  We've only been able

20  to give the Court some bits and pieces about him even though

21  there's a lot in there in the memo and the video and the

22  letters.

23          I can't say this for all of my clients, but I can say

24  it for Mr. Hodzic.  I am a better person for knowing him.  I

25  am a better lawyer for having worked on his case.  His

1   patience during this case has been amazing.  I mean there's

2   whole months where he didn't get to see me; he didn't get to

3   talk to me.  He waited months and months for rulings from the

4   courts, and his patience has been amazing in this case.  He

5   has never complained about his housing situation.  He has

6   never complained about when I was short of time to see him or

7   an investigator couldn't stop by.  It's not his nature to

8   complain.  He's never given a harsh word or anything to me in

9   my representation, and there was times I probably deserved it

10  as long as this case was going on.

11        I've gotten to watch his family grow through this

12  case.  His daughter and his oldest son are here in the

13  courtroom and have been supportive of him.  I have to say for

14  a moment I know some of the letters talked about his daughter

15  Adna, and I'm not taking anything away from his son Ziyad, but

16  I spent a tremendous amount of time with her, and she --

17  whatever career path she chooses in this life, she is going to

18  do amazing.  She has been a tremendous support to her father

19  through this, and she has been a tremendous support to our

20  entire legal team.  There was not a jail visit that someone

21  didn't want to pull out a phone and show me a picture of his

22  children.  Only one of the guards wrote, in part because she

23  has since left the job and could write on his behalf, but the

24  guards were always impressed by him.  The front desk people by

25  his family when I went up to visit him; the guards up there.

11/14/2019 Sentencing Hearing

8

1   It is not very often I would consider submitting letters from

2   other inmates, but I did because those are the kinds of

3   relationships that Mr. Hodzic formed.  Five years in a county

4   jail.  You know, he's watched not only people come and go but

5   come back again and go again while he was in there, and he has

6   endured that without a complaint.

7          I know we talked a lot about the Bosnian War in both

8   the memo and the video because it's an experience that's

9   really central to who he is.  The lessons he learned in that

10  war, he holds close to his heart.  He, like many of the

11  American war veterans that I've had the pleasure to meet, is

12  extremely humble about his service.  It really wasn't until I

13  got -- and I'm going to step away for a second -- these two

14  books from the FBI -- I'm just going to hand them to the

15  Court -- I told Mr. Drake -- to look at for a moment.  They

16  were some of the property taken from Mr. Hodzic's house that

17  was returned to me about a month ago.

18         The smaller book that was on top is essentially

19  obituaries of each of the 155 men that died during the service

20  out of Mr. Hodzic's unit.  So those are just the individuals

21  from his town and his surrounding area that he fought with,

22  and it was when I brought that book to him about a month ago

23  and we started flipping through those pages and he started

24  telling me stories about many of those men, each one of which

25  he knew, some of which he held as they died, that he really

1    started to open up.

2          That second book is a book of all of the war honors,

3    the individuals who received any sort of the military honors,

4    and, again, it was then that his face lit up as he went

5    through and talked about his commander and some of the people

6    who led the battles and some of the people that he fought with

7    that I really got a sense of what that meant to him to be in

8    that war and was able to convey a little bit of that to you in

9    the memo.

10         He talked a lot.  One of the questions I had for him,

11   never having these kinds of experiences that he had, was what

12   that fear was like.  There had to be fear, of course, and he

13   was somewhat shy to talk about it, but he did say, "Of course

14   I was afraid.  Everybody was afraid.  We were afraid every

15   day.  That's what war is."  He goes, "But I was never afraid

16   for myself and my own life.  My fear was always for my family

17   and when they weren't near me, whether they were safe.  When

18   we heard about bombings or attacks, I worried whether it was

19   my mother, whether it was my brother or sister."

20         And he talked about being in those trenches, and he

21   said, "I wasn't afraid about what was coming at me.  I was

22   afraid it was going to get past me because what was behind me

23   were the women and children, and I knew what would happen to

24   them if the enemy got past me."

25         So that's the kind of individual that he was.  He put

11/14/2019 Sentencing Hearing

10

1   his own life in line to save the women and children.  He

2   fought honorably and bravely for his country, Bosnia.  He had

3   clean hands in the war.  He is the recipient of his country's

4   highest military honor, the Golden Lily.

5           In the United States, he has lived; he has put down

6   roots.  He has worked from the minute that he got here into

7   this country to take care of his family and to take care of

8   his children.  He -- his children have learned that work

9   ethic.  I mean I think about the number of hours that they

10  spend at a job that pays them seven or eight dollars an hour

11  so that they can buy him a $20 phone card so he can have a 10-

12  or 20-minute phone call home.  You know, they spend their

13  evenings and weekends working, not only to support the family

14  at home but to make sure he can have a daily phone call home.

15  So a child who's going to spend two hours working for a

16  paycheck for him to have a 20-minute phone call just so they

17  can hear his voice every day -- I think that speaks to the

18  kind of man that he is also.

19          While he was out, like I said, he worked all the

20  time.  You see from some of the letters he was a person that

21  was charitable with what he made.  He was not somebody who

22  lived a grand lifestyle.  He lived modestly so he could make

23  sure others had what they needed.  His sister, although her

24  letter doesn't quite convey as much emotion as I might have

25  liked, she saved that child of his -- of hers and allowed him

1   to remain part of the family and allowed him to grow up in

2   that family.  He has paid for school and books and clothes and

3   all sorts of things for that boy in Bosnia his entire life

4   while raising his own family.

5         He loved Abdullah like a brother.  He really did

6   mentor him from a drug addict into sobriety.  You know, we

7   talked a lot about the different relationships and different

8   things, and I mean one of the things that stuck out to me is

9   Abdullah actually quit one of his trucking jobs, Mr. Hodzic

10  explained to me, because he was being asked to haul alcohol.

11  So he went from a drug addict to someone who wouldn't even

12  work for a company that required him to haul alcohol in his

13  vehicle.  He would rather quit the job than do that.

14        Mr. Hodzic wanted him, if he was going to fight, to

15  be a soldier with a uniform, with socks, with underwear, with

16  first aid supplies, hot cocoa, the Qur'an.  All of those

17  things were in the boxes for Mr. Pazara.  Now, there were

18  scopes also, and there was optical gear so they could see far

19  away.  He's not pretending like what Abdullah was doing was

20  not fighting in a war, but most of the things in there are the

21  things he valued when he received them in the Bosnian War.

22  The value of a pair of socks that you or I might not think

23  about.  An individual who has been in a trench with one and

24  not another thinks about those kind of things, and that was

25  what was in those boxes also.

1              If you were to have access to all the calls and

2    conversations in this case, you are not going to find

3    Mr. Hodzic speaking negatively of the United States.  You are

4    not going to hear him engage in any sort of anti-American

5    conversations or rhetoric.  He is an individual who loves the

6    United States, who is extremely appreciative that the United

7    States allowed him to come here as a refugee.  He is extremely

8    proud of the fact that his children are United States citizens

9    and that they will be allowed to remain in this country and be

10   safe while they are here.

11             There is really no question that at some point in the

12   war Abdullah changed.  The private conversations that were

13   disclosed in discovery by the Government -- many, most all of

14   which had -- were not with Mr. Hodzic -- really show a very

15   different man than the individual that went over to Bosnia

16   originally, the man that Mr. Hodzic was supporting.

17             He has made it clear to his children since his arrest

18   that he does not support ISIS, that he does not support what

19   they stood for.  He regrets his actions.  He does not support

20   the killing of innocent women and children.  He does not

21   support sharia law or the subjugation of women.  I think the

22   way he has raised his daughter shows the Court that that is

23   true.  He was willing to give his own life to save innocent

24   women and children.  He did stand in the way of that.

25             And I am not in any way trying to downplay the

1   seriousness of this case to the Court.  I understand it's a

2   serious case.  Mr. Hodzic understands it's a serious case, but

3   I really cannot stress to you enough the worth of the man

4   standing next to me, the value that he holds to his family and

5   the value that he holds to his country of Bosnia, and I'm

6   asking that your sentence allow him to go home to both his

7   family and his country.  He has spent over 56 months in a

8   county jail awaiting to get to this day, and I ask that the

9   Court find that that's enough time for this offense.  Thank

10  you.

11          THE COURT:  All right.  Mr. Hodzic, do you wish to

12  make any additional statement?  I did watch your video and

13  have read the letters, but you have a right to say anything

14  you wish at this time.

15          THE DEFENDANT:  Yes, Your Honor.  I'm sorry.  I come

16  to United States like stranger, and I left United States like

17  friend.  That's it.  Thank you.

18          THE COURT:  Thank you.

19          Mr. Drake, on behalf of the United States.

20          MR. DRAKE:  Yes, Judge.  I'll keep it brief.  I think

21  the PSR does a very thorough and accurate job of -- of -- of

22  telling the story about what happened in this case, and I know

23  Your Honor has had multiple pleadings before the Court and is

24  very familiar with the facts and circumstances of the case.

25  Here today, Mr. Hodzic stands, though, as the architect and

14

1    the organizer of this conspiracy that's charged in the

2    indictment.  He is the central figure.  He started the

3    conspiracy and was the one person who remained with it the

4    entire time.  I think other than Mr. Abdullah Pazara

5    Mr. Hodzic is the only person that spoke to every member of

6    the conspiracy.  He encouraged them to donate money to

7    Mr. Pazara, and he and the other members of the conspiracy

8    knew that it was going to Pazara as well as other people who

9    were fighting in Syria.

10            I also watched the video and read the transcript, and

11   I believe Mr. Hodzic when he says that he wanted to help his

12   friend.  I think that that's accurate, and I have no reason to

13   doubt and the Government has no reason to doubt that what

14   Mr. Hodzic did when he was in Bosnia in the war was, in his

15   mind, a noble effort and that he did keep clean hands.  The

16   problem here is, Judge, that Mr. Pazara did not have clean

17   hands, and Mr. Hodzic knew that as well as the other members

18   of the conspiracy.

19            What Pazara did when he was in Syria was horrible.

20   This Court's seen evidence of his self-proclaimed involvement

21   in beheadings, in killings, in taking people as slaves and

22   murdering prisoners, and while I think that Mr. Hodzic wanted

23   to help his friend, the evidence is that he also knew that

24   that's what Mr. Pazara was doing, and there's a conflict

25   there.  He didn't discourage that kind of behavior.  He

11/14/2019 Sentencing Hearing

15

1    encouraged that kind of behavior by supporting Mr. Pazara.

2          I think that -- I do disagree with -- with -- it's

3    not a thing I need to get into in great detail, Judge, but I

4    do disagree with Ms. Dragan that Mr. Hodzic never said

5    anything negative about the United States.  I don't think that

6    that goes to an element of the offense, but I will say that

7    there is evidence that he was highly critical of U.S.

8    involvement in the -- in the Syrian conflict.  He was critical

9    of U.S. policy.  He was critical of the U.S. administration at

10   the time.  And I think that that also encouraged him to help

11   Pazara while he was abroad and doing the activities he was

12   engaged in.

13         And while it might be true that today Mr. Hodzic says

14   that he does not support ISIS, that he does not like ISIS,

15   that he was not engaged in any of their ideology, that was not

16   true at the time.  At the time when Mr. Hodzic was giving his

17   supplies and his support to Mr. Pazara, he knew that Pazara

18   was not just an ISIS fighter but an ISIS commander.  He

19   bragged to his peers about the fact that Mr. Pazara commanded

20   up to, at any given time, 250 troops as an ISIS commander.  He

21   knew that Mr. Pazara was engaged with the leadership of ISIS,

22   and he continued to support him with that knowledge.  So while

23   I do think that he was trying to support his friend, I also

24   believe that he knew what his friend was doing and through his

25   support encouraged that behavior.

1      Judge, you've crafted a number of sentences in this

2  case.  We're not asking for a specific sentence here today.

3  We're going to defer to your discretion.  I think that you are

4  very familiar with the facts and know -- know everything that

5  you need to know to make a just sentence, and I will defer to

6  everything else that I said in my sentencing memorandum.

7      Thank you.

8      THE COURT:  Anything further, Ms. Dragan?

9      MS. DRAGAN:  Your Honor, I would just -- in response

10  to that -- just point out to the Court disagreeing with United

11  States policy and politics and their role in Syria was

12  something that a lot of United States citizens did at the

13  time.  That's not necessarily anti-American to say that we

14  disagree with the politics that's going on.  So I just want to

15  be clear that there is a difference there, and I just wanted

16  the Court to know that.

17      THE COURT:  Hold on just a moment.

18      Well, this is a very difficult case.  It is with all

19  of these Defendants, and the whole -- the facts, as you all

20  know -- I mean you all have been -- the lawyers certainly

21  understand what went on in this case, and it's been very

22  complicated, both legally and then the facts are -- there's a

23  lot of different facts.

24      I think that the -- the Defendant has, you know, no

25  prior convictions, a -- you know, a laudable personal history

1    in his -- both as being involved in the war and fighting and

2    making a good life when he got here and taking care of his

3    family and friends and all of the good works that he's done

4    that I've seen, but he did know that he was supporting

5    Mr. Pazara and Mr. Pazara's activities, and I -- I guess I

6    just don't think -- it's really a difficult case.  The

7    guidelines would call for a sentencing -- maximum sentence,

8    which is 30 years in jail, because he's got two counts, each

9    with 15 years, and the guidelines are as high as guidelines

10   pretty much can be, and so -- well, not quite but almost, and

11   so the guidelines would require 30 -- would recommend 30 years

12   in jail.  That's obviously too far, too high.

13       I do believe that a departure is appropriate under

14   4A1.3(b) -- I've said this in this case before -- because I

15   think the automatic assigning a criminal history Category VI

16   is a -- is a -- has the effect of seriously, substantially

17   overrepresenting the seriousness of his criminal history and

18   substantially overrepresenting the likelihood that this

19   Defendant would commit more crimes.  We understand why that's

20   something Congress and the guidelines decided as a policy

21   matter, but it doesn't fit with this Defendant.

22       I also think it's appropriate for -- there's also

23   grounds for a variance because the terrorism guidelines --

24   although I have ruled that they apply in this case and I

25   believe that they do apply in this case and have been

1   correctly applied in the Presentence Report, which, if I

2   forgot to say so, I am adopting as my findings and

3   conclusions, but -- so I think they've been correctly applied,

4   but they do apply -- it would apply the same to Mr. Pazara if

5   he were here.  Maybe he'd have some different charges, but it

6   would be applied the same for the things he did as it would to

7   Mr. Hodzic, who provided support to Mr. Pazara.  So there's

8   a -- it's over -- overly harsh.

9           So I am going to both depart and vary from the

10   sentencing guidelines, but I am not going to sentence the

11   Defendant as requested by his lawyer.  I am going to sentence

12   you to 96 months in jail.  That is a little less than -- well,

13   it is less than -- a lot less than I could sentence you to.

14   It's a long sentence.  You haven't done -- you still have time

15   to do.  Your lawyer asked and I think very eloquently argued

16   for a sentence that would let you get out of jail soon, but

17   you will still have to finish this time.  I think you have

18   reformed.  I think you have learned your lesson and that you

19   will not be a danger to the United States wherever you are,

20   and I'm not concerned about that because I believe that you

21   truly understand the wrongfulness of your conduct in assisting

22   in the terrible war crimes committed by Mr. Pazara and -- and

23   ISIS or -- whether they're called war crimes or not, but

24   the -- the violations of human rights.

25           Mr. Hodzic's statements about his conduct during the

1  Bosnian War are very moving and -- and showed to me that he is

2  a man who did try to fight that war honorably as a defensive

3  thing, but then he supported what is not an honorable

4  insurrection or fighting, I guess, actions.

5         So 96 months is the sentence, and as I said, this is

6  a variance as well as a departure, and the variance is based

7  on his history of charitable activities, his responsibility to

8  his family, his experiences in the Bosnian War and as a

9  refugee, his initial motivations for getting involved in the

10  crime, although that doesn't justify his continuing to support

11  Mr. Pazara after he knew what Mr. Pazara had changed and was

12  doing, the history of his work ethic and his providing for his

13  family, and then, obviously, there are consequences he will

14  have, including deportation and the necessary separation from

15  his children, assuming they, you know, remain in the United

16  States.  So I -- for all those reasons, I believe that this

17  sentence is sufficient but not greater than necessary to meet

18  the sentencing objectives under the statutes.

19         So it is the Judgment of the Court that the Defendant

20  is hereby committed to the custody of the Bureau of Prisons to

21  be imprisoned for a term of 96 months.  This term consists of

22  a term of 96 months on each of Counts I and III, with those

23  terms to be served concurrently to one another.  Oh, yeah, so

24  it is the same on both.  Yeah.

25         Upon release from imprisonment, the Defendant will be

1   placed on supervised release for a term of three years, and

2   this is three years on each of Counts I and III, with those

3   terms to run concurrently.  If the Defendant is not

4   immediately deported, then he must report in person to the

5   Probation Office in the district to which he is released

6   within 72 hours of his release.

7           Assuming if the Defendant does get released on

8   supervision, you must comply with the mandatory conditions

9   that you not commit another crime, that you not unlawfully

10  possess or use a controlled substance.  I will suspend the

11  mandatory drug testing requirements based on the Defendant's

12  low risk of substance abuse.  And the Defendant must cooperate

13  in the collection of DNA as directed by the Probation Office.

14          He must also comply with the standard conditions of

15  supervision that have been adopted by the Court and the

16  following special conditions, and if there are any costs

17  associated with these conditions, the Defendant would have to

18  pay those based on a copayment fee established by the

19  Probation Office.

20          If you are ordered deported from the United States,

21  you must remain outside the United States unless legally

22  authorized to reenter.  If you reenter, you must report to the

23  nearest Probation Office within 72 hours after your entry.

24          You must submit your person, property, house,

25  residence, vehicle, papers, computers, other electronic

1    devices, or your office to a search conducted by a probation

2    officer.  You must warn any other occupants of the premises

3    about this condition, and they can only conduct a search under

4    this condition if they have reasonable suspicion to believe

5    that you violated a condition of supervision and that the

6    areas to be searched would contain evidence of the violation.

7              I do find the Defendant does not have the ability to

8    pay a fine, and, therefore, no fine is imposed.  It is

9    ordered, however, that the Defendant must pay to the United

10   States the special assessment of $100 on each of Counts I and

11   III, for a total of $200, which shall be due immediately.

12             This will be the sentence in the case.  I believe the

13   Government has a dismissal.

14             MR. DRAKE:  Yes, Judge.  I have two matters for the

15   Court.  First, we would move at this time to dismiss Count II

16   as to this Defendant in the indictment.

17             THE COURT:  Count II is dismissed on the Government's

18   motion.

19             MR. DRAKE:  And the parties have also prepared --

20   consistent with the Plea Agreement, Mr. Hodzic agreed to

21   voluntarily be removed.  So we have a number of documents to

22   file for the Court or to tender to the Court.  One are factual

23   allegations in support of his removal.  A stipulated order

24   where the parties have both agreed to it.  The Defendant's

25   statement of why he is removable and understands it.  And then

1   a proposed order of removal for the Court's consideration.

2           THE COURT:  All right.  I'll look at these.

3           MR. DRAKE:  And if -- and, Your Honor, if there's

4   something that the Court is not inclined to in the order, I'm

5   happy to make any adjustments to it.

6           THE COURT:  All right.  Let me review it now so that

7   if I do have any questions I can ask you and --

8           MR. DRAKE:  Yes, Your Honor.

9           THE COURT:  So, Mr. Hodzic, let me ask you.  The --

10  among the documents that the United States has provided are

11  two that were -- have -- bear a signature, and the first one

12  is "Request for Stipulated Judicial Order of Removal," and on

13  the last page, the next to the last page of that document,

14  there are two signatures.  Ms. Dragan, your lawyer, signed

15  here, and there's a signature above it.  Is that your

16  signature?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And did you sign this document?

19          THE DEFENDANT:  Yes.  Yes.

20          THE COURT:  Did you discuss it with your lawyer

21  before you signed it?

22          THE DEFENDANT:  Yes, I did.

23          THE COURT:  And then in the plea statement, again, on

24  the last page, which is page 10, which is -- this is called

25  "Defendant's Plea Statement in Support of Judicial Removal."

1    Again, Ms. Dragan has signed on this, at the bottom, and

2    there's a signature above that.  Did you also sign that?

3              THE DEFENDANT:  Yes, I did.

4              THE COURT:  And you read these and discussed them

5    with your lawyer?

6              THE DEFENDANT:  Yes, I did.

7              THE COURT:  And you do understand that in signing

8    these and agreeing to this you're giving up any right to

9    contest the immigration proceedings that you would have

10   otherwise had?  Do you understand that?

11             THE DEFENDANT:  Yes, I understand.

12             THE COURT:  And you are agreeing to be deported?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  Mr. Drake, anything further?

15             MR. DRAKE:  No, Judge.  The Government would, just to

16   preserve the record, object to the substantive reasonableness

17   of the sentence and the variance and the departure, just to

18   preserve any rights that we might need to, Judge.

19             THE COURT:  Yeah.  And the Government's objection is

20   noted for the record.

21             I am today signing the -- the Order of Judicial

22   Removal, and so all of these documents will be docketed by the

23   clerk's office.

24             Ms. Dragan, the Probation Office made some

25   suggestions about recommendations to the Bureau of Prisons

24

1  that he be evaluated for occupational or educational programs

2  in agriculture is the one recommendation.  Do you want me to

3  make that recommendation, and are there any other

4  recommendations you would like me to make to the Bureau of

5  Prisons?

6          MS. DRAGAN:  Your Honor, I think he would enjoy the

7  agricultural one.  Let me talk to him for a moment about

8  placement.

9      (Defendant and his attorney conferred.)

10         MS. DRAGAN:  Yeah, he would like to stay as close to

11  St. Louis as possible so that his children may still visit

12  him.

13         THE COURT:  Yeah, I will make that recommendation.

14  I'll make -- I'll make those recommendations to the -- to the

15  Bureau of Prisons, Mr. Hodzic, so that the -- I don't actually

16  have authority to order them to put you in any particular

17  location and particular program.  I don't know, given your

18  status, whether they will follow these recommendations.  I

19  certainly think it would be better if you could be close to

20  St. Louis and could be where your family can visit you, but I

21  will make these recommendations to them, but if they don't

22  follow my recommendations, there's nothing I can do about it.

23  Do you understand?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  Okay.  All right.  Then this will be the

1  sentence as stated, and so as I said, the objections of the

2  Government are noted for the record and overruled.

3       Mr. Hodzic, if you want to appeal this sentence, any

4  appeal by you must be filed within 14 days of today's date.

5  If you don't file a notice of appeal within 14 days, you'll be

6  forever giving up your right to do that.  You're entitled to

7  be represented by a lawyer in taking an appeal, and if you

8  can't afford a lawyer, one will be appointed for you at no

9  expense to you.  If you request, the Clerk of Court will

10  assist you in filing a notice of appeal, and the United States

11  also has the right to appeal the sentence.  Anything further?

12       MR. DRAKE:  Nothing from the Government, Your Honor.

13  Thank you.

14       MS. DRAGAN:  No, Your Honor.

15       THE COURT:  All right.  Then the Defendant is

16  remanded to the custody of the Marshals then for imposition of

17  sentence, and court is in recess.

18       (Proceedings concluded at 12:36 p.m.)

19

20

21

22

23

24

25

CERTIFICATE


         I, Gayle D. Madden, Registered Diplomate Reporter and

Certified Realtime Reporter, hereby certify that I am a duly

appointed Official Court Reporter of the United States

District Court for the Eastern District of Missouri.

         I further certify that the foregoing is a true and

accurate transcript of the proceedings held in the

above-entitled case and that said transcript is a true and

correct transcription of my stenographic notes.

         I further certify that this transcript contains pages

1 through 25 inclusive.

         Dated at St. Louis, Missouri, this 6th day of April,

2020.


                              */s/ Gayle D. Madden*

                              _____

                              GAYLE D. MADDEN, CSR, RDR, CRR

                                Official Court Reporter